# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| RAMON MURIL DORADO,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA,<br>Respondent. | No. 79556 |

FILED

FEB 2 5 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF REVERSAL

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of three counts of sexual assault. Eighth Judicial District Court, Clark County; David M. Jones, Judge.

One evening in April 1999, Michelle L. went out with some friends to the Silver Saddle Saloon, where she met appellant Ramon Dorado. Sometime in the early morning hours the next day, believing that she and Dorado would eventually join her friends at another bar, Michelle drove Dorado to either his or his friend's apartment so that he could call out from work. Dorado invited Michelle inside the apartment where she says he sexually assaulted her. Later that day, she went to a police substation to report the assault and completed a rape kit. Four months after Michelle reported the assault, a detective cleared the case due to a lack of leads in the investigation. In 2016, about 17 years after the assault occurred, Michelle's rape kit was tested and inputted into the police's database, which led to the identification of Dorado as a potential match. Police executed a warrant to obtain a fresh DNA sample from Dorado and confirmed the match with Michelle's rape kit.

In April 2017, the State charged Dorado by way of indictment with three counts of sexual assault. Dorado filed various motions to dismiss the indictment for preindictment delay, failure to preserve evidence, and destruction of evidence. The district court denied the motions. Following a three-day trial, the jury returned a guilty verdict on the charges against Dorado.

Dorado argues on appeal that he was prejudiced by the State's failure to preserve material evidence; namely, Michelle's clothing worn at the time of the assault and an audio recording from her initial statement to police.[1] Although the written transcription of Michelle's statement was retained, it was determined that the audio recording was destroyed. The State argues that it did not fail to preserve exculpatory evidence and that Dorado failed to demonstrate that any missing evidence was material to his defense. We disagree with the State.

"We review a district court's decision to grant or deny a motion to dismiss an indictment for abuse of discretion." *Hill v. State*, 124 Nev. 546, 550, 188 P.3d 51, 54 (2008). "A conviction may be reversed when the

---

[1]Dorado also contends that he was prejudiced by the loss of a 911 call because 911 calls are "often more truthful" and, assuming the call would have contradicted Michelle's testimony, he argues that he could have used it to impeach her. As an initial matter, it is unclear from the record whether a 911 call even existed. Michelle testified that she never made a 911 call because she went directly to a police substation to report the incident. But counsel for the State indicated that the 911 call had been lost. However, even assuming such a call did exist, Dorado has failed to establish that this call had any exculpatory value or that it would have been material to his defense. *See Mortensen v. State*, 115 Nev. 273, 285, 986 P.2d 1105, 1113 (1999) ("[M]ere assertions by the defense counsel that an examination of the evidence will potentially reveal exculpatory evidence does not constitute a sufficient showing of prejudice." (alteration in original) (internal quotation marks omitted)). Thus, we conclude this argument is without merit.

state loses evidence if the defendant is prejudiced by the loss *or* the state acted in bad faith in losing it." *Cook v. State*, 114 Nev. 120, 125, 953 P.2d 712, 715 (1998) (emphasis added). A defendant bears the burden to establish prejudice by demonstrating "that it could be reasonably anticipated that the evidence [lost] would have been exculpatory and material to the defense." *Id.* When considering the materiality of the lost evidence, "[t]he question is whether when . . . evaluated [in the context of the entire record] a reasonable doubt exists which was not otherwise present." *Sparks v. State*, 104 Nev. 316, 319, 759 P.2d 180, 182 (1988).

In *Cook v. State*, we explained that the loss of corroborating evidence for sexual assault cases is particularly concerning because

> [t]he crime of rape is rarely perpetrated in the presence of witnesses other than the defendant and the victim and great reliance must be placed on the testimony of the victim, and, if given, the defendant. Thus, the presence or absence of other evidence which would support or refute the testimony of the involved parties has the potential for great significance.

114 Nev. at 126, 953 P.2d at 716 (quoting *State v. Havas*, 95 Nev. 706, 708, 601 P.2d 1197, 1198 (1979), *disapproved of in part by Deere v. State*, 100 Nev. 565, 566-67, 688 P.2d 322, 323 (1984) (disapproving of *Havas* to the extent that it contradicts the rule that "[t]he materiality and potentially exculpatory character of lost or destroyed evidence must be determined on an *ad hoc* basis on the facts of each particular case")).

Dorado first contends that he was prejudiced by the State's loss of Michelle's clothing she was wearing at the time of the assault because the clothing would have supported his defense theory of consent. Dorado argued at trial that the sexual contact was consensual and, based on Michelle's testimony, her clothing would have either buttressed or belied

the defense theory. *See Cook*, 114 Nev. at 125, 126, 953 P.2d at 715, 716 (concluding that the defendant made the requisite showing of prejudice where he asserted, contrary to the victim's testimony, "that the victim's nose began to bleed after the [sexual contact], when she was not wearing her sweater" but the State failed to preserve the sweater, among other items). Further, the State should have reasonably anticipated that Michelle's clothing would have been exculpatory and material to Dorado's defense because in sexual assault cases a victim's clothing often contains DNA evidence or can show signs of struggle, which can corroborate or disprove a victim's testimony. Here, Michelle testified at trial that Dorado ripped her pantyhose during her assault and having the pantyhose would have either corroborated or belied her testimony.

The State argues that at the time, the exculpatory nature of Michelle's clothing was not apparent, and even if it were, there is other evidence demonstrating that Michelle fought off Dorado. While the State did present evidence showing that Michelle had bruises, a scratch on her chest, a red mark on her back from a carpet burn, and broken fingernails, Dorado demonstrated that Michelle's initial statement may have been inconsistent with her trial testimony because she did not mention in her initial statement that Dorado ripped her pantyhose but at trial she did. *Cf. Deere*, 100 Nev. at 566, 688 P.2d at 323 (concluding that the defendant did not establish prejudice due to missing undergarments "where[ ] the victim's testimony was not ambiguous and was amply corroborated by other testimony and by physical evidence"). Moreover, this compounded the prejudice to Dorado from the State's loss of Michelle's clothing as he was unable to use the pantyhose to impeach Michelle regarding this discrepancy. *See Sparks*, 104 Nev. at 319, 759 P.2d at 182 ("The State

SUPREME COURT
OF
NEVADA

(O) 1947A

4

cannot be allowed to benefit . . . from its failure to preserve evidence."). Thus, we conclude that, based on the record as a whole, Dorado has shown that it could be reasonably anticipated that lost clothing would have been exculpatory and material to his defense. *See Cook*, 114 Nev. at 125, 953 P.2d at 715; *Sparks*, 104 Nev. at 319, 759 P.2d at 182.

Dorado next argues that he was prejudiced by the State's loss of the audio recording of Michelle's initial statement because without it he was unable to impeach Michelle's testimony. We agree. Although the written transcript of Michelle's initial statement was available, there were numerous blanks throughout the transcript. There is independent evidence that Michelle's testimony may have been inconsistent with her initial statement and that at least one of those inconsistencies led to an additional count of sexual assault. *See Cook*, 114 Nev. at 125, 953 P.2d at 715 (reversing the defendant's conviction based in part on the State's loss of the victim's initial statement to police). For example, there was no mention of digital penetration in Michelle's initial statement, whereas she testified to digital penetration during trial. Likewise, there is no mention in Michelle's statement that Dorado ripped her pantyhose, but she testified at trial that he did. We thus conclude that Dorado has also shown that it could be reasonably anticipated that lost audio recording of Michelle's voluntary statement would have been exculpatory and material to his defense. *See Cook*, 114 Nev. at 125, 953 P.2d at 715; *Sparks*, 104 Nev. at 319, 759 P.2d at 182.

For these reasons, we conclude that Dorado has established that he was prejudiced by the State's failure to preserve evidence that could reasonably have been anticipated to be both exculpatory and material evidence, and reversal is thus warranted. Accordingly, we

ORDER the judgment of the district court REVERSED.[2]

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Cadish

cc:    Hon. David M. Jones, District Judge
       Michael Lasher LLC
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk

---

[2]Given our disposition in this matter, we need not address Dorado's remaining arguments raised on appeal.